UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN CARY,

       Plaintiff,

                                  CASE NO. 2:11-cv-13767
   v.                            JUDGE PATRICK J. DUGGAN
                                  MAGISTRATE JUDGE PAUL KOMIVES

CORRECTIONS OFFICER
LEFFLER, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (docket #10 and #28)**

I.    RECOMMENDATION: The Court should grant defendants' motions for summary judgment.

II.    REPORT:

A.    *Background*

Plaintiff Bryan Cary is a state prisoner who, at the times relevant to this action, was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. Plaintiff commenced this action on August 29, 2011, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff's complaint raises retaliation claims under the First Amendment and medical claims under the Eighth Amendment against 16 defendants, prison officials at the Gus Harrison Correctional Facility. On October 27, 2011, the Court summarily dismissed a number of the claims and defendants pursuant to 42 U.S.C. § 1997e(c) and 28 U.S.C. §§ 1915(e)(2)(B), 1915A. Remaining before the Court are two claims: (1) plaintiff's medical care claim against defendants Leffler, Downard, McMurtrie, King, Howard, Wensko, Gibbs, and an unknown officer; and (2)

plaintiff's retaliation claim against defendants Leffler, Downard, and McMurtrie.

With respect to the remaining claims, plaintiff alleges that on April 12, 2011, he went to the officer desk to request medical care for a 1-inch "gash" on his arm that was bleeding. Defendant Leffler told him to return to his cell, because he was on loss of privilege ("LOP") status. After meal time, plaintiff requested assistance from defendant Howard, who also told him to return to his cell. Plaintiff was eventually allowed to go to medical at 1:30 a.m. The nurse who treated plaintiff told him that the cut was "down to the meat," but that she could not stitch the wound. The nurse taped the cut. Plaintiff further alleges that when he returned from work on April 13 (at about 3:30 p.m.), the cut was bleeding again. He requested medical care, and defendant Leffler again told him to return to his cell. After he did so, he removed the dressing from his wound and the cut began to "gush" blood. Plaintiff again attempted to seek medical attention following dinner, but was prevented from obtaining care by defendants Downard, McMurtrie, Wensko, Howard, King, Gibbs, and unknown officer. *See* Compl., at 3. Plaintiff alleges that defendant McMurtrie filed a false misconduct against him regarding this incident. *See id*. He further alleges that he filed numerous grievances against defendants, and that in retaliation for these grievances defendants McMurtrie and Leffler, with the "assistance" of defendant Downard, filed several misconduct tickets against him. Finally, he alleges that his hand was slammed in a door, his property taken, and a claim of self-harm resulting in a psychological evaluation fabricated, all in retaliation for his grievances. *See id*. at 4.

The matter is currently before the Court on two motions for summary judgment filed by defendants. On December 20, 2011, defendants Howard, McMurtrie, Downard, Gibbs, Wensko, and King filed a motion for summary judgment, in which they argue that they are entitled to dismissal because: (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff's Eighth Amendment

claim fails as a matter of law; (3) plaintiff's retaliation claim fails as a matter of law; and (4) they are entitled to qualified immunity. Plaintiff filed a response to the motion on January 17, 2012. Second, on May 7, 2012, defendant Leffler filed a motion for summary judgment, raising the same arguments as the other defendants. Plaintiff filed a response to this motion on May 16, 2012.

B.   *Legal Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to

particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e). To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Eighth Amendment Claims*

Plaintiff first claims that defendants denied him timely medical care in violation of his rights under the Eighth Amendment. The Court should conclude that defendants are entitled to summary judgment on this claim.

1.   *Governing Law*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the Federal Constitution or the laws of the United States; and (2)

the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). Thus, "[t]he first step in any such claim is to identify the specific constitutional [or statutory] right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality op.); *see also*, *Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it

must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of

the harm that may befall a particular inmate. *See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996). Importantly, however, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

2.  *Analysis*

Even assuming that plaintiff could establish that defendants were deliberately indifferent under the subjective prong of the *Farmer*, he must still show a serious medical need under the

objective prong of that test by establishing "harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). As the Sixth Circuit has explained, to make this showing in cases in which, as here, "an inmate . . . complains that [a] delay in medical treatment rose to a constitutional violation," the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Petitioner has failed to do so here.

The objective medical record in evidence belies petitioner's claim that the alleged delay in treatment implicated a serious medical need. Plaintiff was treated at 11:55 p.m. on the night he received the cut by Nurse Lynn VanAusdale. She noted that the wound was "bleeding a small amount" and was approximately 1½ inches long and a ½ inch wide. She cleaned the wound and applied steri-strips, which resulted in the wound being "closed well." Def.s' Mot., Ex. A, at 1. Contrary to plaintiff's assertion, nothing in this record indicates that Nurse VanAusdale told him at this time that it was too late to stitch the wound. The following day, plaintiff was treated by Nurse Mark C. Comfort. Contrary to plaintiff's assertion that the wound was "gushing" at this time, Nurse Comfort observed that "[t]here was no active bleeding from wound and no sign of infection." *Id.* at 2. He also observed that there was no change in the size of the wound, and that he was able to close the wound with 3 steri-strips. *See id.* Plaintiff requested stitches, but was told at this time that it was too late for the wound to be stitched. *See id.* Plaintiff was reexamined by Nurse Comfort on April 14 and 17, and both times he observed that there was no sign of infection and the steri-strips were still intact. *See id.* at 3-4. Nurse Comfort also provided plaintiff with Motrin for pain and band-aids. *See id.* Another examination by Nurse Comfort on May 1 observed that the wound was

"healing well and is scabbed over." *Id*. at 7. Finally, plaintiff was examined on May 3 by Physicians' Assistant Rosilyn Jindal, who observed that plaintiff's wound was "completely healed." *Id*. at 10.

The objective medical evidence, therefore, establishes that plaintiff had a small laceration on his arm that was treated with steri-strips, antibiotics, and Motrin. "Cuts requiring no more than small bandages do not constitute 'serious medical needs' covered by the Eighth Amendment." *Stankowski v. Farley*, 251 Fed. Appx. 743, 748 (3d Cir. 2007). Plaintiff's laceration, which was treated with steri-strips, is insufficient as a matter of law to constitute a serious medical need. *See Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 44-45 (N.D.N.Y. 2009) (citing cases); *Giddings v. Joseph Coleman Ctr.*, 473 F. Supp. 2d 617, 625 (E.D. Pa. 2007), *aff'd*, 278 Fed. Appx. 131 (3d Cir. 2008); *Roberts v. Samardrich*, 909 F. Supp. 594, 606 (N.D. Ind. 1995). Further, even if plaintiff's cut could be considered a serious medical need, the medical record does not support a finding that plaintiff suffered any detrimental effect from the delayed treatment, and indeed plaintiff does not allege any such effect. *See Giddings*, 473 F. Supp. 2d at 625 ("The result of delayed medical treatment in this case is also negligible; there is no evidence of unnecessary suffering or any risk of permanent disability.").[1] In short, "plaintiff has not

---

[1] The only effect alleged by plaintiff as a result of the delay in treatment is that he was unable to obtain stitches. As a factual matter, this is doubtful. Although Nurse Comfort informed plaintiff the day following the occurrence that it was too late to suture the wound, *see* Def.s' Br., Ex. A, at 2, there is no indication that Nurse VanAusdale told plaintiff this when the wound was first treated on the evening of April 12, about (according to plaintiff) 8 hours after the cut occurred, and plaintiff has not presented any evidence that it would have been too late to stitch the wound at that time. Thus it appears that Nurse Van Ausdale made a medical decision to treat the wound with steri-strips rather than sutures. Plaintiff brings no claim against Nurse VanAusdale, and in any event her decision to treat the wound with steri-strips rather than sutures is the type of exercise of medical judgment that does not give rise to an Eighth Amendment claim. *See McClure v. Foster*, No. 5:10cv78, 2011 WL 665819, at *14 (Jan. 7, 2011), *magistrate judge's report and recommendation adopted*, 2011 WL 941442, at *2 (E.D. Tex. Feb. 16, 2011), *aff'd*, 465 Fed. Appx. 373, 375 (5th Cir. 2012). In any event, even if defendants' delay in providing

submitted medical evidence that he suffered any harm" as a result of the alleged delay in treatment, and thus his deliberate indifference claim fails as a matter of law. *Hardy v. 3 Unknown Agents*, 690 F. Supp. 2d 1074, 1099 (C.D. Cal. 2010). Accordingly, the Court should grant summary judgment to defendants on plaintiff's medical claims.

D.     *Retaliation Claims*

Plaintiff also asserts that defendants retaliated against him for filing a grievance in March 2011 as well as for his complaints and grievances regarding his medical care. The Court should conclude that defendants are entitled to summary judgment on this claim.

In order to succeed on his retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.). However, if the "defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*. at 399. While the adverse action inquiry is ordinarily a question of fact for the jury, some "adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 398-99.

Although plaintiff alleges that he engaged in protected activity by filing grievances and that defendants took adverse actions against him by issuing false misconduct tickets, slamming his hand

---

treatment resulted in plaintiff being unable to have the wound sutured, this alone would not show any detriment arising from the delay. Rather, plaintiff also must show that closing the wound with steri-strips rather than stitches resulted in a detriment. This plaintiff has failed to do.

in a door, and fabricating a claim of self-harm resulting in a psychological evaluation, plaintiff has failed to allege any facts suggesting or offer any evidence to show a causal connection between the adverse actions and plaintiff's protected conduct. In both his complaint and his responses to defendants' motions, plaintiff argues only that the adverse actions occurred during the time he was engaged in protected conduct. While temporal proximity alone may support a finding of a causal connection in some situations, "[s]ubstantial case law from th[e] [Sixth] [C]ircuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone,'" and evidence in addition to temporal proximity is usually required. *LaFountain v. Mikkelsen*, ___ Fed. Appx. ___, ___, 2012 WL 1608548, at *4 (6th Cir. May 8, 2012) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)); *see also*, *Coleman v. Bowerman*, ___ Fed. Appx. ___, ___, 2012 WL 1109613, at *2 (6th Cir. Apr. 4, 2012) (citations omitted) ("In theory, temporal proximity between the protected conduct and the adverse action, standing alone, may be significant enough to create an inference of retaliatory motive. However, when other evidence of retaliatory motive is lacking, we have been reluctant to hold that temporal proximity is sufficient to establish causation."); *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010) ("Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive."). Beyond temporal proximity, plaintiff offers nothing but his own conclusory assertion that the defendants' actions were motivated by his protected conduct. Such "conclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (internal quotation omitted); *see also*, *Cox v. Jackson*, 579 F. Supp. 2d 831, 848 (E.D. Mich. 2008) (Rosen

J., adopting Report of Komives, M.J.). Accordingly, the Court should conclude that defendants are entitled to summary judgment on plaintiff's retaliation claims.[2]

E.  *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff has failed to raise a genuine issue of material fact, and that defendants' are entitled to judgment as a matter of law.[3] Accordingly, the Court should grant defendants' motions for summary judgment.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal.

---

[2] If the Court disagrees with this recommendation, and concludes that plaintiff has sufficiently shown a retaliatory motive to withstand summary judgment, the Court should nevertheless grant summary judgment to defendants on plaintiff's retaliation claims premised on the false misconduct tickets and the false report of self-harm. With respect to the former, plaintiff was found guilty of, or declined to contest his guilt on, each of the misconduct tickets issued against him. *See* Def.s' Br., Exs. B, I-M. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)) (alteration in original). With respect to the latter, the only result of the alleged false report of self-harm was that plaintiff was required to attend a psychological examination. Having a psychological evaluation performed does not constitute an adverse action that would deter a person of ordinary firmness from pursuing his First Amendment rights. *See Rose v. Goldman*, No. 02 CV 5370, 2009 WL 4891810, at *12 (Dec. 9, 2009), *magistrate judge's report and recommendation adopted*, 2011 WL 1130214 (E.D.N.Y. Mar. 24, 2011); *cf. Mateo v. Fischer*, 682 F. Supp. 2d 423, 434-35 (S.D.N.Y. 2010). This would leave only plaintiff's retaliation claim based on defendant Leffler's allegedly slamming a door on plaintiff's hand.

[3] These conclusions make it unnecessary to address defendants' exhaustion and qualified immunity arguments. *See* 42 U.S.C. § 1997e(c)(2) (court may dismiss claim on merits notwithstanding failure to exhaust administrative remedies); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (in conducting qualified immunity analysis, court whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?", and only if this question is answered in the affirmative does the court proceed to consider whether that right was clearly established).

*Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/13/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 13, 2012.
>
> s/Eddrey Butts
> Case Manager